Frederic M. Douglas (Calif. State Bar # 212778)
Attorney At Law
15333 Culver Drive, Suite 340
Irvine, California 92604-3051
Tel: (949) 293-0442
Fax: (949) 203-8768
fdouglas@cox.net

Attorney for Plaintiff
Kenzi Management Inc.

## THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| KENZI MANAGEMENT INC., a Wyoming Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>MORGAN STANLEY & Co. LLC, a Delaware corporation; MORGAN STANLEY SMITH BARNEY LLC; ARGENT FINANCIAL GROUP, INC., a Delaware corporation; ARGENT INSTITUTIONAL TRUST COMPANY, a Florida corporation; DOES 1-10, inclusive,<br><br>Defendants | Case No.:<br><br>**COMPLAINT FOR:**<br><br>**1) CONVERSION;**<br>**2) NEGLIGENCE;**<br>**3) NEGLIGENT MISREPRESENTATION;**<br>**4) NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE;**<br>**5) FRAUD;**<br>**6) CONSPIRACY;**<br>**7) CONSTRUCTIVE FRAUD;**<br>**8) NEGLIGENT PERFORMANCE OF AN UNDERTAKING;**<br>**9) BREACH OF CONTRACT;**<br>**10) BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; AND**<br>**11) BREACH OF FIDUCIARY DUTY**<br><br>**DEMAND FOR JURY TRIAL** |

**COMPLAINT FOR DAMAGES - 1**

# COMPLAINT

Plaintiff KENZI MANAGEMENT INC. ("Kenzi" or "Plaintiff") alleges the following facts upon actual knowledge with respect to itself and its own acts and upon information and belief as to the actions of Defendants MORGAN STANLEY & Co. LLC ("MORGAN STANLEY"), ARGENT INSTITUTIONAL TRUST COMPANY, ("Argent") and DOES 1-10 (collectively, "Defendants"), complains and alleges as follows:

## I.    THE PARTIES

1.    Kenzi Management Inc. is a Wyoming corporation, with a principal office address of 4652 Via Marina, Marina Del Rey, California 90292, within the County of Los Angeles, California.

2.    On information and belief, Defendant Morgan Stanley & Co. LLC is a Delaware corporation with its principal place of business in New York, New York. Upon further information and belief, Morgan Stanley & Co. LLC's sole member is Morgan Stanley Capital Management, LLC, a limited liability company whose sole member is Morgan Stanley. Upon yet further information and belief, Morgan Stanley is a publicly held corporation that has no parent corporation. Upon even yet further information and belief, Mitsubishi UFJ Financial Group, Inc., 7-1 Marunouchi 2-chome, Chiyoda-ku, Tokyo 100-8330, beneficially owns more than 10% of Morgan Stanley's outstanding common stock.

3.    On information and belief, Defendant Morgan Stanley Smith Barney LLC is a Delaware limited liability company with its principal place of business in New York, New York. Upon further information and belief Morgan Stanley maintains an agent for service of process, CT Corporation, with the address for service of process at 330 N. Brand Blvd., Glendale, California 91203. Morgan Stanley Smith Barney LLC

**COMPLAINT FOR DAMAGES - 2**

maintains a place of business at 444 South Flower Street, 34th floor, Los Angeles, California, and all relevant activities occurred at this place of business, emanated from this place of business, or materially involved actions and inactions contracted and reasonably expected to be performed at this place of business. Morgan Stanley Smith Barney LLC also maintains a place of business at 601 Union Street, Suite 2900, Seattle, Washington 98101.

4.    On information and belief, Defendant Argent Financial Group, Inc. is a Delaware corporation, having its principal place of business at 5901 Peachtree Dunwoody Road, Suite C495, Atlanta, Georgia 30328. Argent Financial Group, Inc. is the parent company of Argent Institutional Trust Company, which is a Florida corporation, with a principal place of business of 1715 North Westshore Blvd., Suite 750, Tampa, Florida 33607. Upon yet further information and belief, Argent Institutional Trust Company was formerly known as TMI Trust Company.

5.    On information and belief, Defendant Argent Institutional Trust Company operates as an investment management firm and offers financial planning, trusts, and real estate management services to individuals and organizations.

6.    Plaintiff is informed and believes, and on that basis alleges, Morgan Stanley, Argent, and each of the DOE defendants (collectively "Defendants") is responsible in some manner for the events, occurrences and happenings herein referred to, either contractually or tortiously, and each singly or together caused the damage to the Plaintiff as herein alleged.

7.    Plaintiff is informed and believes, and based thereon alleges, that Defendants, and each of them, at all relevant times were and are the agents, employees, partners, joint venturers, owners, principals, employers or other representatives of each and every other defendant, and in doing the things hereinafter alleged, were acting within the course and scope of such agency, employment, partnership, joint venture,

**COMPLAINT FOR DAMAGES - 3**

representation, or ownership. Plaintiff is further informed and believes, and based thereon allege, that the acts and conduct herein alleged of each such defendant were known to, authorized by, consented to or ratified by the other remaining defendants and each of them.

## II.    JURISDICTION AND VENUE

8.    Jurisdiction is based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1). Plaintiff is a corporation incorporated under the laws of the State of Wyoming with a principal place of business in California. Plaintiff is informed and believes that Defendant Morgan Stanley is a corporation with its "nerve center" in New York, New York. Defendant Argent has a principal place of business in Atlanta, Georgia and Florida. Therefore, there is total diversity of citizenship among the parties.

9.    The amount in controversy is well in excess of $75,000.

10.    Venue lies in the Central District of California pursuant to 28 U.S.C. § 1391(a) in that the subject account for Kenzi Management is located in the Los Angeles office of Morgan Stanley and Kenzi Management's location is in Los Angeles County.

11.    This Court has personal jurisdiction over Defendants in this action and venue is proper in this judicial district under 28 U.S.C. § 1391(b) and (c) because, as alleged further below: (a) Defendants have intentionally engaged in substantial business within this forum amounting to sufficient minimum contacts, including, but not limited to, the offer for sale and sale of their products and/or services into California and into this district; and (b) a substantial part of the acts or omissions giving rise to the asserted claims occurred or had effects in this judicial district. Venue is proper in this district under 28 U.S.C. § 1391 as Defendants are subject to the personal jurisdiction of the Court situated herein. Defendants maintain continuous and

**COMPLAINT FOR DAMAGES - 4**

systematic commercial contacts with the State of California by, *inter alia*, purposefully availing themselves of the opportunity to conduct commercial activities, and regularly conducting business in the State of California; committing a substantial part of the wrongful acts complained of herein in interstate commerce, in the State of California, and in this judicial district; and conducting business activities in the State of California by advertising, offering for sale, and selling services as complained of herein while actively and continuously soliciting and consummating commercial transactions with California residents.

### III.    GENERAL ALLEGATIONS

12.    On or about February 17, 2022, Plaintiff Kenzi Management held a bond, being held in the lawyer's trust account at TMI for the law firm trusted by Kenzi Management to hold the bond.

13.    On or about June 1, 2022, Kenzi Management instructed its law firm to transfer a total of 297,000 shares, with each share valued at $1,000, such that the total value was $297,000,000.00 ($2.97 million).

14.    The transfer of the total amount was to be sent from TMI, which today is known as Argent Institutional Trust Company, whose parent company is Argent Financial Group, Inc., to Kenzi Management's account at Morgan Stanley.

15.    The reasons for the transfers of shares, as known by the law firm, TMI, and Morgan Stanley, was for Kenzi Management to act on a valuable business investment regarding a $1 billion project in Florida, the "City Center West Orange Project."

16.    The City Center West Orange Project involved CCWO Finance 1 LLC, which was seeking an investment by Kenzi Management to partially fund the construction of phase one of a portfolio of seven phases of commercial and residential

property in Ocoee, Florida (in the West Orange area of Florida). Phase one was to include 578 apartments, 225,000 square feet of restaurant/retail/entertainment space, 50,000 square feet of office space, and two parking garages. The total amount was $297 million, of which, the shares that were supposed to be transferred, $297 million, would have been 10% of that amount. The Egan-Jones Ratings Company had provided a rating of A, and BBB+ as a stress test, as of June 10, 2021, upon which Kenzi Management relied to initiate the transfer request to Defendants.

17.    Kenzi Management reviewed the statements for its Morgan Stanley account, which confirmed transfer of the entire number of shares from TMI to Morgan Stanley. Attached hereto as Exhibit A is a true and correct copy of a July 2002 statement of the Morgan Stanley account, with the account number redacted.

18.    Kenzi Management believed, and it was reasonable to believe, that the law firm, TMI, and Morgan Stanley had properly and completely transferred the entire 297,000 shares and that the entire 297,000 shares were safely held in the Morgan Stanley account.

19. Kenzi Management relied, to its detriment, upon the representations of the law firm, TMI, and Morgan Stanley, that the entire 297,000 shares were held in trust for Kenzi Management's benefit in preparation for acting on the prospective business advantage of participating in the Florida project.

20. All along, for over a year Defendants never informed Kenzi Management that the requested transfer of the entirety of the 297,000 shares was not completed, but that TMI (now Argent) transferred only one (1) share, valued at $297,000, was actually transferred, not the correct amount of shares, 297,000 valued at $1,000 each, for the total that was requested, $297,000,000. In fact, Morgan Stanley and Argent together hid the situation, colluded to not disclose this situation in their statement to Kenzi Management. TMI (now Argent) acted negligently in carrying out the requested

**COMPLAINT FOR DAMAGES - 6**

transfer of 1,000 shares (total value of $297,000,000) but only transferring one share (valued at $297,000).

21. For over a year, TMI let Kenzi Management believe that all shares were transferred, provided evidence through statement that the transfer occurred successfully. Kenzi Management had no reason to doubt TMI's representation that the transfer had been completed as instructed. Morgan Stanley never informed Kenzi Management of any deficient delivery, despite having matching instructions between TMI and Morgan Stanley. The Morgan Stanley statements were misleading and Kenzi Management justifiably relied on the misleading statement from Morgan Stanley. Instead of making Kenzi Management whole, Defendant Morgan Stanley and Defendant Argent each refused to correct their error and have not transferred the 296,999 shares, of which, only one share was transferred out of the full 297,000 shares.

22. Matthew Newman, at all relevant times, worked for Morgan Stanley and was assigned as the financial advisor for Kenzi Management, Inc., working from his office at Morgan Stanley's downtown Los Angeles branch.

23. Matthew Newman informed Plaintiff that TMI (now Argent) did not transfer the planned number of 297,000 shares to Morgan Stanley, due to an operational failure directly attributable to Argent's management team, Morgan Stanley's management team, Argent's compliance team, and Morgan Stanley's compliance team. Attached hereto as Exhibit B is a true and correct copy of a June 30, 2024 letter from Matthew Newman to Kenzi Management, detailing the situation relating to the actions and omissions of Morgan Stanley and TMI (now Argent).

24. The error attributable to Argent and Morgan Stanley had a drastic impact on Matthew Newman's position with Morgan Stanley, altering Matthew Newman's career, along with Matthew Newman's credibility with Morgan Stanley.

**COMPLAINT FOR DAMAGES - 7**

25. Matthew Newman worked to transfer the bonds via international non-ACAR free transfer, including speaking extensively with the Morgan Stanley bond transfer team.

26. TMI (now Argent) agents confirmed to Matthew Newman of Morgan Stanley that all instructions were understood, and all necessary documentation had been completed.

27. Upon delivery of TMI's transfer, it was clear to Matthew Newman that the numbers were transposed between the number of bonds (297,000) and the value actually received at Morgan Stanley ($297,000).

28. The instructions transmitted by Matthew Newman of Morgan Stanley were to transfer the full position of 297,000 bonds at $1,000 par value, totaling the full holding value of $297,000,000.

29. Matthew Newman noted that the transfer from TMI (now Argent) was only $297,000 in value, leaving $296,703,000 of bonds not transferred by TMI (now Argent).

30. Morgan Stanley told Matthew Newman that the transfer effort was repeated and there were no more bonds available from TMI (now Argent) and that TMI stated that there was no further value.

31. Morgan Stanley requested a statement from TMI (now Argent), and the statement showed zero value after the $297,000 transfer.

32. Next, Matthew Newman received notice from Morgan Stanley management and compliance that Kenzi Management Inc.'s account was frozen immediately, and Morgan Stanley purposely devalued the $297,000 in bonds and marked the pricing at a value of $0.00.

33. Morgan Stanley told Matthew Newman to cease communicating with Plaintiff.

**COMPLAINT FOR DAMAGES - 8**

34. TMI (now Argent) later sent an email message to Matthew Newman informing him that TMI confirmed the error and that TMI wanted to proceed with transferring the remaining $296,703,000.00 of bonds. Attached hereto as Exhibit C is a true and correct copy of a January 24, 2024 email message from Christy Sheppard, Trust Office of Argent Institutional Trust Company to Matthew Newman. The account number in the email message is redacted in Exhibit C.

35. Matthew Newman forwarded this email message from TMI (now Argent) to Morgan Stanley's executive complex management and compliance team, requesting that they immediately advise Matthew Newman how to proceed.

36. Morgan Stanley management personally scolded Matthew Newman and ordered him not to communicate with Plaintiff. Morgan Stanley told Matthew Newman that his licenses and role at Morgan Stanley were in jeopardy and that all other work was put on hiatus.

37. Morgan Stanley management told Matthew Newman that if he communicated with Plaintiff, they would ensure that Matthew Newman would never work in the industry again.

38. Matthew Newman argued extensively to Morgan Stanley that Mr. Newman had documentation verifying that the bond transfer was in error and that the failed transfer was a total failure from Morgan Stanley's operations and management team.

39. Due to Defendants' negligence and failure to correct or mitigate damages, Kenzi Management lost the opportunity to participate in the Florida project, which would have produced gainful profit that now is not available to Kenzi Management.

40. Defendant converted the entrusted shares, depriving Kenzi Management of the enjoyment of its property, misrepresented the facts of the incomplete transfer, constructively defrauding Plaintiff, breached its contracts, breached their fiduciary duties, and other torts as detailed herein.

**COMPLAINT FOR DAMAGES - 9**

41. Due to Defendants' negligence, the bond rating expired while waiting for Defendants to correct the consequences of their negligence, leading to the Florida project backing to dissipate and the reputation and goodwill of Kenzi Management being severely harmed due to the negligence and misrepresentations of Defendants.

## IV.    CAUSES OF ACTION

### COUNT 1

### CONVERSION

42.    The allegations of Paragraphs 1-41 above are hereby incorporated herein by reference.

43.    Plaintiff had the right to possession and ownership of its property, the 297,000 shares.

44.    Defendants converted Plaintiff's 297,000 shares by wrongfully acting and disposing of Plaintiff's property rights in the 297,000 shares.

45.    Due to Defendants' wrongful acts and omissions, Plaintiff was damaged.

### COUNT 2

### NEGLIGENCE

46.    The allegations of Paragraphs 1-45 above are hereby incorporated herein by reference.

47.    Defendants had a duty of care to Plaintiff and Defendants breached that duty by acts and omissions that are not compatible with the standard of care appropriate in the dealings with Plaintiff.

48.    Defendants' negligence was at least a substantial factor in causing Plaintiff's injury or damage.

49.    Plaintiff was damaged due to Defendants negligence.

**COMPLAINT FOR DAMAGES - 10**

## COUNT 3

## NEGLIGENT MISREPRESENTATION

50.     The allegations of Paragraphs 1-49 above are hereby incorporated herein by reference.

51.     Defendants misrepresented a material fact, including falsely stating that the entire 297,000 shares were transferred and were in Plaintiff's account.

52.     Defendants had no reasonable ground for believing that their representation was true.

53.     Defendants intended that Plaintiff rely on their negligent representation.

54.     Plaintiff justifiably relied on the representations of Defendants, including their representations that the 297,000 shares were properly, completely, and successfully transferred to Plaintiff's account.

55.     Defendants' representations caused Plaintiff's damages and Plaintiff was damaged from Defendants' negligent misrepresentations.

## COUNT 4

## NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

56.     The allegations of Paragraphs 1-55 above are hereby incorporated herein by reference.

57.     Defendants and Plaintiff had an existing business relationship.

58.     Plaintiff had a prospective business relationship with CCWO Finance 1 LLC regarding the City Center West Orange Project.

59.     Defendants had a duty of care to Plaintiff, knew of Plaintiff's prospective business relationship seeking prospective economic advantage, and had a special

**COMPLAINT FOR DAMAGES - 11**

relationship with Plaintiff, at least regarding Plaintiff's efforts to engage in the prospective business relationship.

60.     Defendants' wrongful acts and omissions, at least from refusing to correct the transfer and refusal to  perform the transfer of 297,000 shares, knowing that the City Center West Orange Project opportunity would fail without the transfer, wrongfully interfering with Plaintiff's prospective economic advantage.

61.     Defendant's wrongful interference caused Plaintiff's damages, and damaged Plaintiff.

## COUNT 5
## FRAUD

62.     The allegations of Paragraphs 1-61 above are hereby incorporated herein by reference.

63.     Defendants Morgan Stanley and TMI, now Argent Institutional Trust Company, intentionally misrepresented the value of Plaintiffs' bonds as having zero value. Defendants knew that this misrepresentation was false, and the Defendants intended that Plaintiff believe their false representation.

64.     Defendants Morgan Stanley and TMI, now Argent Institutional Trust Company, intentionally misrepresented the fact that they both made a mistake that  in the transfer of the bonds, which were supposed to be a transfer of 297,000 bonds at $1,000 value each, with a total value if $297,000,000.00 but instead they covered up their error of transferring only $297,000 dollars only. Defendants knew that this misrepresentation was false, and the Defendants intended that Plaintiff believe their false representation.

**COMPLAINT FOR DAMAGES - 12**

65.    Defendants' misrepresentations were misrepresentations of material facts and Plaintiff would not have acted as it did without the misrepresentations of material facts.

66.    Defendants knowingly concealed material information from Plaintiff that was required under their agreements. Defendants committed acts, omissions, and concealments involving a breach of legal and equitable duties, trust, or confidence that result in damages to Plaintiff.

67.    Defendants also materially misrepresented material information to the Plaintiff with full knowledge by Defendants that their affirmative representations were false, fraudulent, and misrepresented the truth at the time said representations were made.

68.    Under the circumstances, the material omissions of material misrepresentations of the Defendants were malicious.

69.    Defendants intended to induce Plaintiff to rely on their material misrepresentations.

70.    Plaintiff reasonably and justifiably relied upon the representations of the Defendants in agreeing to request their services in transferring and taking custody of Plaintiff's shares.

71.    Had Plaintiff known of the falsity of Defendants' representations, Plaintiff would not have entered into any agreement that is the subject of this action or requested that Defendants retain, take possession of, transfer, transmit, and receive Plaintiff's shares.

72.    Plaintiff was misled to its prejudice.

73.    As a direct and proximate cause of Defendants' material omissions and material misrepresentations, Plaintiff has suffered damages, all according to proof at trial.

**COMPLAINT FOR DAMAGES - 13**

74.     Plaintiff is entitled to punitive damages pertaining to Defendants'
constructive fraud.

75.     Plaintiff first learned of the actions and omissions of Defendants,
including their failure to disclose and the fraud committed upon it on or about June 30,
2024. Any applicable statute of limitations should run from this date.

## COUNT 6
## CONSPIRACY

76.     The allegations of Paragraphs 1-75 above are hereby incorporated herein
by reference.

77.     Plaintiff had the right to possession and ownership of its property, the
297,000 shares.

78.     Defendants converted Plaintiff's 297,000 shares by wrongfully acting and
disposing of Plaintiff's property rights in the 297,000 shares.

79.     Due to Defendants' wrongful acts and omissions, Plaintiff was damaged.

80.     The Morgan Stanley Defendants conspired with the Argent Defendants to
convert Plaintiff's shares, to breach the contract, to defraud Plaintiff, and to interfere
with Plaintiff's economic advantage.

81.     Each Defendant committed acts in furtherance of the conspiracy, with the
knowledgeable intent to act jointly to damage Plaintiff.

82.     Plaintiff is entitled to punitive damages pertaining to Defendants'
constructive fraud.

83.     Plaintiff first learned of the actions and omissions of Defendants,
including their failure to disclose and the fraud committed upon it on or about June 30,
2024. Any applicable statute of limitations should run from this date.

**COMPLAINT FOR DAMAGES - 14**

## **COUNT 7**

## **CONSTRUCTIVE FRAUD**

84.     The allegations of Paragraphs 1-83 above are hereby incorporated herein by reference.

85.     Defendants breached a fiduciary duty to pay Plaintiff according to the terms of the agreements in the context of a fiduciary relationship.

86.     Defendants breached a fiduciary duty to transfer Plaintiff's shares in the context of a fiduciary relationship.

87.     Defendants knowingly concealed material information from Plaintiff that was required under their agreements. Defendants committed acts, omissions, and concealments involving a breach of legal and equitable duties, trust, or confidence that result in damages to Plaintiff.

88.     Defendants also materially misrepresented material information to the Plaintiff with full knowledge by Defendants that their affirmative representations were false, fraudulent, and misrepresented the truth at the time said representations were made.

89.     Under the circumstances, the material omissions of material misrepresentations of the Defendants were malicious.

90.     Plaintiff reasonably and justifiably relied upon the representations of the Defendants in agreeing to request their services in transferring and taking custody of Plaintiff's shares.

91.     Had Plaintiff known of the falsity of Defendants' representations, Plaintiff would not have entered into any agreement that is the subject of this action or requested that Defendants retain, take possession of, transfer, transmit, and receive Plaintiff's shares.

**COMPLAINT FOR DAMAGES - 15**

92.      Plaintiff was misled to its prejudice.

93.      As a direct and proximate cause of Defendants' material omissions and material misrepresentations, Plaintiff has suffered damages, all according to proof at trial.

94.      Plaintiff is entitled to punitive damages pertaining to Defendants' constructive fraud.

95.      Plaintiff first learned of the actions and omissions of Defendants, including their failure to disclose and the fraud committed upon it on or about June 30, 2024. Any applicable statute of limitations should run from this date.

## COUNT 8
## NEGLIGENT PERFORMANCE OF AN UNDERTAKING

96.      The allegations of Paragraphs 1-95 above are hereby incorporated herein by reference.

97.      Defendants breached a duty to Plaintiff.

98.      Defendants failed to exercise reasonable care, which increased the risk of harm to Plaintiff.

99.      Defendants undertook to perform a duty owed to Plaintiff.

100.      Plaintiff relied on Defendants to perform the undertaking and Defendants' misfeasance, and nonfeasance affirmatively contributed to injury to Plaintiff.

101.      Defendant's breach of the duty is at least a substantial factor in bringing about injury, damage, loss, and harm to Plaintiff.

102.   Plaintiff is entitled to damages pertaining to Defendants' negligent performance of the undertaking, as Plaintiff was damaged.

**COMPLAINT FOR DAMAGES - 16**

## COUNT 9

## BREACH OF CONTRACT

103.   The allegations of Paragraphs 1-102 above are hereby incorporated herein by reference.

104.   Plaintiff and each Defendant entered into contracts for the deposit, custody, entrustment, and transfer of the 297,000 shares owned by Plaintiff.

105.    Defendants breached those contracts.

106.    Plaintiff is damaged due to Defendants' breaches of contract.

107.    Defendants failed to abide by the material terms of the agreements, including by refusing to make transfers as agreed pursuant to the terms of the agreements with Plaintiff. Defendants have failed, refused, and neglected to transfer all amounts per the terms of the agreements and the sum of $297,000,000 plus interest is due and payable through today.

108.  Plaintiff has duly performed all promises, conditions, and agreements on its part to be performed, as modified according to the agreements.

109.   Although demand has been made upon Defendants to  perform the transfer, no part of said shares has been transferred, and the shares should now be released and transferred.

110.   Plaintiff has been damaged by Defendants' failure to transfer the 297,000 shares, plus interest.

## COUNT 10

## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

111.   The allegations of Paragraphs 1-110 above are hereby incorporated herein by reference.

**COMPLAINT FOR DAMAGES - 17**

112.   In every contract, there is an implied covenant of good faith and fair dealing by each party not to do anything which will deprive the other parties of the benefits of the contract.

113.   The Agreements have the implied covenant of good faith and fair dealing such that Defendants should not have done anything that would deprive Plaintiff of the benefits of the agreements.

114.   Defendants' breaches of the agreements and other acts breached the implied covenant of good faith and fair dealing by interfering with Plaintiff in the performance of the agreements.

115.   Defendants' breaches of the agreements and other acts breached the implied covenant of good faith and fair dealing by failing to cooperate with Plaintiff in the performance of the agreements.

116.   Defendants breached the duty of good faith and fair dealing in the performance and enforcement of the agreements by not transferring the 297,000 shares as agreed, not mitigating damages, not correcting errors they committed, and not, to this day, completing the transfer of the entire 297,000 shares.

117.   Under the circumstances, the material omissions and material misrepresentations of the Defendants were malicious.

118.   Plaintiff reasonably and justifiably relied upon the representations of the Defendants in agreeing to provide transfer the 297,000 shares according to the terms of the agreements.

119.   Had Plaintiff known of the falsity of Defendants' representations, Plaintiff would not have entered into the agreements that is the subject of this action or provided additional funds.

120.   Plaintiff was misled to its prejudice.

121.   Defendants are liable for all damages proximately resulting from Defendants' conduct.

**COMPLAINT FOR DAMAGES - 18**

## COUNT 11

## BREACH OF FIDUCIARY DUTY

122. The allegations of Paragraphs 1-121 above are hereby incorporated herein by reference.

123. Defendants owed a fiduciary duty to Plaintiff.

124. A fiduciary relationship existed between Plaintiff and Defendants.

125. Defendants breached the duty to Plaintiff.

126. Defendants' negligent acts and omissions were at least a substantial factor in bringing about Plaintiff's injury and damages.

## V.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

A.    For the sum of $297,000,000.00;

B.    For treble damages;

C.    For attorney's fees according to statutes;

D.    For interest, prejudgment and post-judgment;

E.    For actual, compensatory, and punitive damages

F.    For court fees and costs of the suit herein incurred; and

G.    For such other further relief as the Court may deem just and proper.


May 31, 2025                          Respectfully submitted,


                                       _____/s/ Frederic M. Douglas_____

                                       Frederic M. Douglas
                                       Calif. State Bar # 212778
                                       Attorney At Law
                                       15333 Culver Drive, Suite 340
                                       Irvine, California 92604-3051
                                       Tel: (949) 293-0442
                                       Fax: (949) 203-8768
                                       fdouglas@cox.net


**COMPLAINT FOR DAMAGES - 19**

Attorney for Plaintiff
KENZI MANAGEMENT INC.

## **PLAINTIFF'S DEMAND FOR JURY**

Plaintiff hereby demands trial by jury.

May 31, 2025                          ___/s/ Frederic M. Douglas
                                      Frederic M. Douglas
                                      Attorney for Plaintiff
                                      KENZI MANAGEMENT INC.

////

**COMPLAINT FOR DAMAGES - 20**

**EXHIBIT A**

# Morgan Stanley

**CLIENT STATEMENT** | For the Period July 1-31, 2022

**STATEMENT PACKAGE FOR:**
KENZI MANAGEMENT INC
C/O RAMZI ALLEN ALAFANDI

**TOTAL VALUE OF YOUR ACCOUNTS** (as of 7/31/22)      **$5,412.00**
*Includes Accrued Interest*

*Morgan Stanley Smith Barney LLC. Member SIPC.*

**Your Financial Advisor**
**Matthew David Newman**
Senior Vice President
Matthew.Newman@morganstanley.com
213 486-8888

**Your Branch**
444 SOUTH FLOWER ST, 34TH FL
LOS ANGELES, CA 90071
Telephone: 213-486-8811; Alt. Phone: 800-832-7648; Fax: 213-486-8857

#BWNJGWM

```
KENZI MANAGEMENT INC
C/O RAMZI ALLEN ALAFANDI
4652 VIA MARINA APT 203
MARINA DEL REY CA 90292-7212
```

**Client Service Center** (24 Hours a Day; 7 Days a Week): 800-869-3326
**Access Your Accounts Online:** www.morganstanley.com/online

*INVESTMENTS AND INSURANCE PRODUCTS: NOT FDIC INSURED • NOT A BANK DEPOSIT •
NOT INSURED BY ANY FEDERAL GOVERNMENT AGENCY • NOT BANK GUARANTEED •
MAY LOSE VALUE • UNLESS SPECIFICALLY NOTED, ALL VALUES ARE DISPLAYED IN USD*

237 - 184316 - 967 - 4 - 3

# Morgan Stanley

## Expanded Disclosures

Expanded Disclosures, which apply to all statements Morgan Stanley Smith Barney LLC (we/us) sends to you, are provided with your first statement and thereafter twice a year.

**Questions?**
Questions regarding your account may be directed to us by using the contact information on the statement cover page, or the Client Service Center at (800) 869-3326.

**Errors and Inquiries**
Be sure to review your statement promptly, and immediately address any concerns regarding entries that you do not understand or believe were made in error by contacting the Branch Manager of the office where you maintain your account. Oral communications regarding any inaccuracy or discrepancy in this statement should be re-confirmed in writing to further protect your rights, including rights under the Securities Investor Protection Act (SIPA). Your statement will be deemed correct unless we receive a written inquiry of a suspected error. See your account documentation for special rules regarding your rights and responsibilities with respect to erroneous electronic fund transfers, including a description of the transfers covered. For concerns or complaints, contact our Client Relations Department at (866) 227-2256 or mail to P.O. Box 95002, South Jordan, UT 84095, or contact us at www.morganstanley.com.

**Senior Investor Helpline**
In order to provide Morgan Stanley's senior investor clients a convenient way to communicate with us, we offer a Senior Investor Helpline. Senior investors or those acting on their behalf may call (800) 280-4534, Monday-Friday 9am-7pm Eastern Time.

**Account Valuation**
Account values are computed by adding (1) the market value of all priced positions, (2) valuations utilizing industry service providers and/or outside custodians for other positions, and (3) adding any credit or subtracting any debit to your closing Cash, Money Market Funds and/or Deposit balance. Cash, Deposits and Money Market Funds are displayed on a settlement date basis, and other positions are displayed in your account on a trade date basis. The values of fixed income positions in summary displays include accrued interest in the totals. In the "Holdings" section, fixed income market value and accrued interest are also displayed in separate columns. Accrued interest is the interest earned but not yet paid on the bond since its last interest payment. In most cases, it is calculated from the date of the last coupon payment (or "dated date") through the closing date of the statement. Foreign Currency Deposits are reflected in U.S. dollars as of the statement end date. The Annual Percentage Yield (APY) for deposits represents the applicable rate in effect for your deposits at the statement ending date. This APY may be different than the APY that

was in effect during the statement period. For current Bank Deposit or Money Market Fund yields, go to www.morganstanley.com/wealth-investmentstrategies/ratemonitor.html.

**Additional Retirement Account Information**
Tax-qualified account contributions are subject to IRS eligibility rules and regulations. The Contributions information in this statement reflects contributions for a particular account, without reference to any other account. Check with your tax advisor to verify how much you can contribute, if the contribution will be tax deductible, and if other special rules apply (e.g., to conversions/recharacterizations of Traditional to Roth/Roth to Traditional IRAs). Tax reporting is provided for IRA, VIP Basic and 403(b) accounts but not for VIP Plus and RPM accounts. The account value used for your Required Minimum Distribution calculation, if any, is based on the prior December 31st Account Value, including accrued interest. Additionally, for IRAs (1) the "Max. Individual Contributions Allowed (by SSN)" reflects the annual limit on contributions that you can make to Traditional and Roth IRAs under the Internal Revenue Code (this limit applies on a per person basis, not per account; other rules apply to IRAs which are part of employer-sponsored plans); and (2) the categorization of any contribution's deductibility is based upon information provided by you. The information included in this statement is not intended to constitute tax, legal or accounting advice. Contact us if any of this information is incorrect.

**Availability of Free Credit Balances and Financial Statements**
Under the customer protection rules of the SEC [17 CFR §240.15c3-3], we may use funds comprising free credit balances carried for customer accounts here, provided that these funds are payable to customers on demand (i.e., are free of a lien or right of set-off in our favor or on behalf of some third party to whom you have given control). A financial statement of this organization is available for your personal inspection at its offices, or a copy will be mailed to you upon your written request.

**Gain/(Loss) Information**
Gain/(Loss) is provided for informational purposes. It is not a substitute for Internal Revenue Service (IRS) Form 1099 (on which we report cost basis for covered securities) or any other IRS tax form, and should not be used for tax preparation. Unrealized Gain/(Loss) provided on this statement is an estimate. Contact your own independent legal or tax advisor to determine the appropriate use of the Gain/(Loss) information on this statement. For more information, go to www.morganstanley.com/wealth/disclosures/disclosures.asp, or call Client Service Center.

**Tax Reporting**
Under Federal income tax law, we are required to report gross proceeds

of sales (including short sales) on Form 1099-B by March 15 of the year following the calendar year of the transaction for reportable (i.e., non-retirement) accounts. For sales of certain securities acquired on or after January 1, 2011 (or applicable date for the type of security) we are also required to report cost basis and holding period. Under IRS regulations, if you have not provided us with a certification of either U.S. or foreign status on applicable Form W-9 or W-8, your accounts may be subject to either 24% back-up withholding or 30% nonresident alien withholding on payments made to your accounts.

**Investment Objectives**
The following is an explanation of the investment objective alternatives applicable to your account(s): Income - for investors seeking regular income with low to moderate risk to principal: Capital Appreciation - for investors seeking capital appreciation with moderate to high risk to principal; Aggressive Income - for investors seeking higher returns either as growth or as income with greater risk to principal; Speculation - for investors seeking high profits or quick returns with considerable possibility of losing most or all of their investment.

**Listed Options**
Information with respect to commissions and other charges related to the execution of options transactions has been included in confirmations of such transactions previously furnished to you and such information will be made available to you promptly at your request. Promptly advise us of any material change in your investment objectives or financial situation.

**Important Information if you are a Margin Customer** (not available for certain retirement accounts)
If you have margin privileges, you may borrow money from us in exchange for pledging assets in your accounts as collateral. The amount you may borrow is based on the value of eligible securities in your margin accounts. If a security has eligible shares the number of shares pledged as collateral is indicated below the position. If you have a margin account, as permitted by law, we may use certain securities in your account for, among other things, settling short sales or lending the securities for short sales, for which we may receive compensation.

**Margin Interest Charges**
We calculate interest charges on margin loans as follows: (1) multiply the applicable margin interest rate by the daily close of business net settled debit balance, and (2) divide by 360 (days). Margin interest accrues daily throughout the month and is added to your debit balance at month-end. The month-end interest charge is the sum of the daily accrued interest calculations for the month. We add the accrued interest to your debit balance and start a new calculation each time the applicable interest rate changes and at the close of every statement month. For interest rate information, log into your Morgan Stanley

CONTINUED

**CLIENT STATEMENT** | For the Period July 1-31, 2022

## Expanded Disclosures (CONTINUED)

account at www.morganstanley.com/online. Select your account with a Margin agreement and click Interest Rates for more information.

**Information regarding Special Memorandum Account**
If you have a Margin Account, this is a combined statement of your Margin Account and Special Memorandum Account maintained for you under Section 220.5 of Regulation T issued by the Board of Governors of the Federal Reserve System. The permanent record of the Special Memorandum Account as required by Regulation T is available for your inspection at your request.

**Money Market Fund (MMF) Pricing**
You could lose money in MMFs. Although MMFs classified as government funds (i.e., MMFs that invest 99.5% of total assets in cash and/or securities backed by the U.S. government) and retail funds (i.e., MMFs open to natural person investors only) seek to preserve value at $1.00 per share, they cannot guarantee they will do so. The price of other MMFs will fluctuate and when you sell these shares they may be worth more or less than originally paid. MMFs may impose a fee upon sale or temporarily suspend sales if liquidity falls below required minimums. During suspensions, shares would not be available for purchases, withdrawals, check writing or ATM debits. A MMF investment is not insured or guaranteed by the Federal Deposit Insurance Corporation or other government agency.

**Notice Regarding Global Investment Manager Analysis**
Morgan Stanley's Global Investment Manager Analysis team conducts analysis on various mutual funds and exchange-traded funds for clients holding those funds in certain investment advisory programs. If you have invested in any of these funds in another type of account, such as a brokerage account, you will not receive the same materials and status updates on the funds as we provide to investment advisory clients (including instructions on selling fund shares).

**Pricing of Securities**
The prices of securities are derived from various sources, and do not necessarily represent the prices at which those securities could have been bought or sold. Although we attempt to use reliable sources of information, we can offer no assurance as to their accuracy, reliability or completeness. Prices are as of the date shown only and are not an offer by us or our affiliates to purchase or sell any instrument or enter into any transaction or a commitment by us or them to make such an offer. Prices of securities not actively traded may not be available, and are indicated by N/A (not available). For additional information on how we price securities, go to www.morganstanley.com/wealth/disclosures/disclosures.asp.

**Important Information About Auction Rate Securities**
For certain Auction Rate Securities there is no or limited liquidity. Therefore, the price(s) for these Auction Rate Securities are indicated

by N/A (not available).  There can be no assurance that a successful auction will occur or that a secondary market exists or will develop for a particular security.

**Structured Investments Risks and Considerations**
Structured Investments (Structured Products) are complex products and are subject to special risks, which may include, but are not limited to: loss of initial investment; issuer credit risk and price volatility resulting from actual or anticipated changes to issuer's and/or guarantor's credit ratings/spreads; limited or no appreciation and limits on participation in any appreciation of underlying asset(s); risks associated with the underlying asset(s); no periodic payments; call prior to maturity; early redemption fees for market linked deposits; lower interest rates and/or yield compared to conventional debt with comparable maturity; unique tax implications; limited or no secondary market; and conflicts of interest due to affiliation, compensation or other factors which could adversely affect market value or payout to investors. Investors also should consider the concentration risk of owning the related security and their total exposure to any underlying asset. Structured Investments, which may appear in various product categories and are identified on the Position Description Details line as "Asset Class: Struct Inv," may not perform in a manner consistent with the product category where they appear, and therefore may not satisfy portfolio asset allocation needs for that category. When displayed, the accrued interest, annual income and yield for structured investments with a contingent income feature (e.g., Range Accrual Notes/Contingent Income Notes) are estimates and assume specified accrual conditions are met during the relevant observation period and payment in full of all contingent interest. Actual accrued interest, annual income and yield will be dependent upon the performance of the underlying asset(s) and may be significantly lower than estimates shown. For more information on the risks and conflicts of interest related to Structured Investments, log in to Morgan Stanley Online at www.morganstanley.com/structuredproductsrisksandconflicts. For information on risks specific to your Structured Investments, contact us.

**Security Measures**
This statement features several embedded security elements to safeguard its authenticity. One is a unique blue security rectangle, printed in heat-sensitive ink on the back of every page. When exposed to warmth, the color will disappear, and then reappear.

**SIPC Protection**
We are a member of Securities Investor Protection Corporation (SIPC), which protects securities of its customers up to $500,000 (including $250,000 for claims for cash). An explanatory brochure is available upon request or at www.sipc.org. Losses due to market fluctuation are not protected by SIPC and assets not held with us may not be covered

by SIPC protection. To obtain information about SIPC, including an explanatory SIPC brochure, contact SIPC at 1-202-371-8300 or visit www.sipc.org.

**Certain Assets Not Held at Morgan Stanley Smith Barney LLC**
You may purchase certain assets through us that may be held at another financial institution. Assets not held with us may not be covered by SIPC protection. We may include information about certain assets on this statement solely as a service to you and are not responsible for information provided by external sources. Generally, any financial institution that holds securities is responsible for year-end reporting (e.g., Forms 1099) and separate periodic statements, which may vary from our information due to different reporting periods. In the case of networked mutual funds, we perform all year-end tax reporting.

**Total Income**
Total income, as used in the income summaries, represents dividends and/or interest on securities we receive on your behalf and credit to your account(s) during the calendar year. We report dividend distributions and taxable bond interest credited to your account to the IRS. The totals we report may differ from those indicated as "This Year" figures on the last statement for the calendar year. Only information on Forms 1099 should be used for tax reporting. In the case of Corporations, Real Estate Investment Trusts (REITs), Master Limited Partnerships, Regulated Investment Companies and Unit Investment Trusts, some sponsors may reclassify the distribution to a different tax type for year-end reporting.

**Transaction Dates and Conditions**
Transactions display trade date and settlement date. Transactions are included on this statement on trade date basis (excluding BDP and MMFs). Trades that have not settled as of statement month end will also be displayed in the "Unsettled Purchases/Sales Activity" section. Upon written request, we will give you the date and time of a transaction and the name of the other party to a transaction. We and/or our affiliates may accept benefits that constitute payment for order flow. Details regarding these benefits and the source and amount of any other remuneration received or to be received by us in connection with any transaction will be furnished upon written request.

**Tax and Legal Disclosure**
Morgan Stanley does not provide legal or tax advice. Please consult your own tax advisor.

Revised 05/2021

Morgan Stanley

This page intentionally left blank



# Morgan Stanley

**CLIENT STATEMENT** | For the Period July 1-31, 2022

## Account Summary

**Active Assets Account**

**KENZI MANAGEMENT INC**
**C/O RAMZI ALLEN ALAFANDI**

### CHANGE IN VALUE OF YOUR ACCOUNT (includes accrued interest)

| | This Period (7/1/22-7/31/22) | This Year (1/1/22-7/31/22) |
|---|---|---|
| **TOTAL BEGINNING VALUE** | — | — |
| Credits | — | — |
| Debits | — | — |
| Security Transfers | — | — |
| Accrued Interest On Security Transfers | 5,049.00 | 5,049.00 |
| **Net Credits/Debits/Transfers** | **$5,049.00** | **$5,049.00** |
| **Change in Value** | **363.00** | **363.00** |
| **TOTAL ENDING VALUE** | **$5,412.00** | **$5,412.00** |

### MARKET VALUE OVER TIME

The below chart displays the most recent thirteen months of Market Value.



The percentages above represent the change in dollar value from the prior period. They do not represent account investment performance, as they do not consider the impact of contributions and withdrawals, nor other factors that may have affected performance calculations.

### ASSET ALLOCATION (includes accrued interest)

| | Market Value | Percentage |
|---|---|---|
| Fixed Income & Preferreds | $5,412.00 | 100.00 |
| **TOTAL VALUE** | **$5,412.00** | **100.00%** |

*FDIC rules apply and Bank Deposits are eligible for FDIC insurance but are not covered by SIPC. Cash and securities (including MMFs) are eligible for SIPC coverage. See Expanded Disclosures. Values may include assets externally held, as a courtesy, and may not be covered by SIPC. Foreign Exchange (FX) is neither FDIC nor SIPC insured. For additional information, refer to the corresponding section of this statement.*



Fixed Income & Preferreds

*This asset allocation represents holdings on a trade date basis, and projected settled Cash/BDP and MMF balances. These classifications do not constitute a recommendation and may differ from the classification of instruments for regulatory or tax purposes.*

# Morgan Stanley

**CLIENT STATEMENT** | For the Period July 1-31, 2022

Page 6 of 10

## Account Summary

**Active Assets Account**
▮▮▮▮▮▮▮▮

**KENZI MANAGEMENT INC**
**C/O RAMZI ALLEN ALAFANDI**

### BALANCE SHEET (^ includes accrued interest)

| | Last Period (as of 6/30/22) | This Period (as of 7/31/22) |
|---|---|---|
| Corporate Fixed Income ^ | — | $5,412.00 |
| **Total Assets** | — | **$5,412.00** |
| **Total Liabilities** (outstanding balance) | — | — |
| **TOTAL VALUE** | — | **$5,412.00** |

### CASH FLOW

| | This Period (7/1/22-7/31/22) | This Year (1/1/22-7/31/22) |
|---|---|---|
| **OPENING CASH, BDP, MMFs** | — | — |
| **Total Investment Related Activity** | — | — |
| **Total Cash Related Activity** | — | — |
| **Total Card/Check Activity** | — | — |
| **CLOSING CASH, BDP, MMFs** | — | — |

### INCOME AND DISTRIBUTION SUMMARY

| | This Period (7/1/22-7/31/22) | This Year (1/1/22-7/31/22) |
|---|---|---|
| **Income And Distributions** | — | — |
| **Tax-Exempt Income** | — | — |
| **TOTAL INCOME AND DISTRIBUTIONS** | — | — |

*Taxable and tax exempt income classifications are based on the characteristics of the underlying securities and not the taxable status of the account.*

### GAIN/(LOSS) SUMMARY

| | Realized This Period (7/1/22-7/31/22) | Realized This Year (1/1/22-7/31/22) | Unrealized Inception to Date (as of 7/31/22) |
|---|---|---|---|
| **TOTAL GAIN/(LOSS)** | — | — | — |

*The Gain/(Loss) Summary, which may change due to basis adjustments, is provided for informational purposes and should not be used for tax preparation. Refer to Gain/(Loss) in the Expanded Disclosures.*

# Morgan Stanley

**CLIENT STATEMENT** | For the Period July 1-31, 2022

Page 7 of 10

## Account Detail

Active Assets Account | KENZI MANAGEMENT INC
C/O RAMZI ALLEN ALAFANDI

**Investment Objectives (in order of priority):** Capital Appreciation, Speculation, Aggressive Income, Income
*Inform us if your investment objectives, as defined in the Expanded Disclosures, change.*

**Brokerage Account**

## HOLDINGS

*This section reflects positions purchased/sold on a trade date basis. "Market Value" and "Unrealized Gain/(Loss)" may not reflect the value that could be obtained in the market. Your actual investment return may differ from the unrealized gain/(loss) displayed. Fixed Income securities are sorted by maturity or pre-refunding date, and alphabetically within date. Estimated Annual Income a) is calculated on a pre-tax basis, b) does not include any reduction for applicable non-US withholding taxes, c) may include return of principal or capital gains which could overstate such estimates, and d) for holdings that have a defined maturity date within the next 12 months, is reflected only through maturity date. Actual income or yield may be lower or higher than the estimates. Current Yield reflects the income generated by an investment, and is calculated by dividing the total estimated annual income by the current market value of the entire position. It does not reflect changes in its price. Structured Investments, identified on the Position Description Details line as "Asset Class: Struct Inv," may appear in various statement product categories. When displayed, the accrued interest, annual income and current yield for those with a contingent income feature (e.g., Range Accrual Notes or Contingent Income Notes) are estimates and assume specified accrual conditions are met during the relevant period and payment in full of all contingent interest. For Floating Rate Securities, the accrued interest, annual income and current yield are estimates based on the current floating coupon rate and may not reflect historic rates within the accrual period.*

### CORPORATE FIXED INCOME

*Certain debt securities do not reflect a current price, although the anticipated accrual of interest payments is shown. The accrued interest is based upon the coupon and the anticipated maturity of the debt security, although neither has been independently verified. There is no assurance that any accrued interest will be paid at maturity or at any other time.*

### CORPORATE BONDS

| Security Description | Trade Date | Face Value | Orig Unit Cost / Adj Unit Cost | Unit Price | Orig Total Cost / Adj Total Cost | Market Value | Unrealized Gain/(Loss) | Est Ann Income / Accrued Interest | Current Yield % |
|---|---|---|---|---|---|---|---|---|---|
| **CCWO FINANCE 1 LLC REGS** | — | 297,000.000 | — | N/A | Please Provide | | | — | — |
| Coupon Rate 4.000%; Matures 02/16/2047; CUSIP G198A7AA6 | | | — | | Please Provide | N/A | N/A | $5,412.00 | |
| Interest Paid Annually; Callable $100.00 on 02/17/27; First Coupon 02/17/23; Issued 02/17/22; Asset Class: FI & Pref | | | | | | | | | |

| | Percentage of Holdings | Face Value | | | Orig Total Cost / Adj Total Cost | Market Value | Unrealized Gain/(Loss) | Est Ann Income / Accrued Interest | Current Yield % |
|---|---|---|---|---|---|---|---|---|---|
| **CORPORATE FIXED INCOME** | | 297,000.000 | | | — | | | — | — |
| | | | | | — | $0.00 | N/A | $5,412.00 | |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| **TOTAL CORPORATE FIXED INCOME**<br>(includes accrued interest) | 100.00% | | | | | $5,412.00 | | | |

# Morgan Stanley

**CLIENT STATEMENT** | For the Period July 1-31, 2022

Page 8 of 10

## Account Detail

**Active Assets Account** ▮▮▮▮▮▮▮  **KENZI MANAGEMENT INC**
**C/O RAMZI ALLEN ALAFANDI**

| | Percentage of Holdings | | | Total Cost | Market Value | Unrealized Gain/(Loss) | Est Ann Income Accrued Interest | Current Yield % |
|---|---|---|---|---|---|---|---|---|
| **TOTAL VALUE** | | | | — | **$0.00** | **N/A** | — | — |
| | | | | | | | $5,412.00 | |
| **TOTAL VALUE** (includes accrued interest) | 100.00% | | | | **$5,412.00** | | | |

*Unrealized Gain/(Loss) totals only reflect positions that have both cost basis and market value information available. Cash, MMF, Deposits and positions stating 'Please Provide' or 'Pending Corporate Actions' are not included.*

## ALLOCATION OF ASSETS (^ includes accrued interest)

| | Cash | Equities | Fixed Income & Preferred Securities | Alternatives | Structured Investments | Other |
|---|---|---|---|---|---|---|
| Corporate Fixed Income ^ | — | — | $5,412.00 | — | — | — |
| **TOTAL ALLOCATION OF ASSETS** ^ | **—** | **—** | **$5,412.00** | **—** | **—** | **—** |

## ACTIVITY

### TRANSFERS, CORPORATE ACTIONS AND ADDITIONAL ACTIVITY

#### SECURITY TRANSFERS

| Activity Date | Activity Type | Security (Symbol) | Comments | Quantity | Accrued Interest | Amount |
|---|---|---|---|---|---|---|
| 7/20 | Transfer into Account | CCWO FINANCE 1 LLC REGS | 4.000% DUE2047-02-16 [G198A7AA6] | 297,000.000 | $5,049.00 | $0.00 |

## MESSAGES

**FINRA BrokerCheck**
FINRA has established the public disclosure program, known as BrokerCheck, to provide certain information regarding the disciplinary history of FINRA members and their associated persons. The BrokerCheck Hotline Number is 1-800-289-9999. The FINRA web site address is www.finra.org. An investor brochure that includes information describing FINRA BrokerCheck may be obtained from FINRA.
**Tips on Protecting Yourself from Fraudulent Account Activity**
The safety of our clients is of utmost importance to Morgan Stanley. We are taking this opportunity to alert our clients of the following scams that have been identified by a number of organizations. **Please be reminded that you should never provide your account numbers, passwords, or personal information, including your social security number, to anyone you do not know.**Example of scams to be aware of:
  **Treatment scams; Supply scams; Provider scams; Charity scams; Phishing scams; App scams; Investment scams;Tech Support scams; Home Sanitation scams; and Government Assistance scams.**If you have any questions regarding these scams, please immediately contact us.
**Senior Investor Helpline**
For any inquiries or potential concerns, senior investors or someone acting on their behalf may contact our Firm by calling (800) 280-4534.

# Morgan Stanley

**CLIENT STATEMENT** | For the Period July 1-31, 2022

## Account Detail

Active Assets Account

**KENZI MANAGEMENT INC**
**C/O RAMZI ALLEN ALAFANDI**

**Important Information Regarding the Bank Deposit Program Tiers**
Effective September 1, 2022, Morgan Stanley will be changing the tiers within BDP.  The updated tiers are available on the website: https://www.morganstanley.com/wealth-investmentstrategies/ratemonitor.html
As a result of this change:
-   You may be placed into a different tier based upon the total deposit balances in your BDP Pricing Group as determined on a weekly basis. For more information on BDP Pricing Groups, please see the BDP
Disclosure - https://www.morganstanley.com/wealth-investmentstrategies/pdf/BDP_disclosure.pdf
-    Interest rates for each of the tiers within BDP are set periodically based upon prevailing economic and business conditions and are subject to change.

Morgan Stanley

This page intentionally left blank

**EXHIBIT B**

From the desk of Matthew Newman

June 30th, 2024

Kenzi Management, LLC
Mr.Ramzi Alafandi
Re: CCWO Finance 1 LLC Bond transfer and incomplete delivery of $297 Million USD -BNY Mellon held bonds to Morgan Stanley account by TMI trust.

Dear Ramzi,

This letter is to confirm as requested the intent of our business together in my role as your financial advisor at Morgan Stanley. This relationship was incepted based on our discussions regarding your CCWO FInance 1 LLC Bond position as well as a comprehensive estate an financial plan that would follow the asset transfer. The bonds didn't transfer as planned and this operational failure was directly attributed to a lack of supervision from management and compliance teams. I am aware that this error had a dramatic impact on your position with the firm but it has also altered my career and role and credibility at MS. The details are as follows:

- First we used the Euroclear ISIN and successfully applied for your US CUSIP for the bonds

- Eagan Jones rated the bonds "A" grading per the report you provided from the company

- The focus of our discussions was to leverage the bonds using an Leveraged Asset Line (LAL) of Credit at MS considering there standing and value. Like kind bonds were held and leveraged between 70-85% of trading LTV.

- The bonds had a Bloomberg verified value at approximately $73 dollars per bond.

- We discussed that based on the lack of trading and liquidity we needed to make a market in the bonds and Ramzi agreed to liquidate 20% of the position if possible.

- We then spoke with MS Trading desk and FI team and they immediately became very suspicious and were very unfamiliar with the structure of the bond and looked across the firm for a desk to take the issue. They said that without an S&P or Moody's rating it would be untradable and refused to make a market until you were able to get the rating done

- You stated that that was something you would undertake and could proceed with

- We worked diligently to transfer the bonds via international non-ACAT free transfer and spoke extensively with the Morgan Stanley bond transfer team and TMI agents confirmed all instructions and completed necessary documentation. I was based in Morgan Stanley Downtown Los Angeles Branch where I had my office at the time.

- Upon delivery it was clear that the numbers were directly transposed between the number of bonds and the value we received. The instructions were to transfer 297,000 bonds ( the full position) at $1000 par value – Or the full $297,000,000.00 holding

- We received $297,000 dollars only, thus leaving $296,703,000 of bonds at BNY Mellon and TMI

- Morgan Stanley stated that they repeated the effort and that was all the bonds available and there was no further value- They requested a statement from TMI and it showed zero value following the $297,000 transfer

- I then received notice of the decision by MS Management and compliance that your account was frozen immediately and they purposely devalued the $297,000.00 bonds and marked the pricing at a $0 value

- I was then told to refrain from speaking with you and you were a Fraudulent client and bad actor.

- I was called into management's office and told that my position was at risk if I engaged with you further and that you were clearly misrepresenting many facts.

- They sent you a "Not Pass" letter- meaning they asked that you move your assets and take your business elsewhere

- I argued extensively and stated that I had documentation verifying the error as a transfer problem and that you had substantial external assets and that this was a complete failure from our operations and management team

- They questioned our relationship and asked "why would someone with these assets work with you?"

- I grew absolutely tired of their incompetence, lack of effort to assist me and the ay they treated you. Based on these and other client operational failures I moved offices to Morgan Stanley – 601 Union St, Downtown Seattle Branch

- I abided by their supervisory restrictions and every effort you made to handle this issue I referred to management

- The final issue occurred when I received an email directly from TMI stating that they found the error and wanted to proceed with transferring the remaining $296,703,000.00 of bonds.

- You and I didn't speak and I forwarded the email to my executive complex management and compliance team and requested they immediately advise what to do.   It was clear that the outside third party had admitted failure and were trying to fix the issue

- The following week I was called into my complex manager, Alex Burlingame's, office- where he scolded me opening in front of Brent Gray- my Seattle Branch office manager whom you had been working worth following my move to get the bond issue resolved. He called me an "obstinate know-it-all that couldn't take NO for an answer". He also said that you had already received a "No Pass" letter from the firm and that the issue was closed. I explained that all I did was forward an email from the counter party that admitted guilt as far as mistakenly transposing the numbers of bonds and value as I had explained for more than a year at that time. Alex stated that my licenses and role at the firm were now in jeopardy and that all other work we had been collaborating on was now on hiatus and he wouldn't support any of the other initiatives i had been working on with him. He stated that I had been warned and that you were clearly a fraudulent bad actor and teh firm made the decision and my forwarding of an email was enough to lose my licenses, He said that if I proceeded or spoke with you he would ensure that I never worked in the business again.

- I was then frozen out of two very large business expansion projects I had been developing with multinational teams

- I was denied a promotion as a Corporate Cash Management Director

- I was denied a promotion to Family Wealth Director and Private Wealth Management services access that came with the role

- April 4th, I was on business in Los Angeles visiting clients. I received a call from Alex Burlingame that I was placed on immediate paid leave and under investigation

- They turned off my corporate mobile phone a removed all access to firm systems and offices and personel.

- June 6th, two months after, they completed their "investigation." Management and compliance had no findings but stated to my attorney that they had a "loss of confidence from management" and I was not terminated but also not invited to return to work.

- Following three months now- I am resigning tomorrow and starting a new role elsewhere.


I know that we acted in accordance with all industry and firm protocols and didn't violate any rules or regulations. This was a massive failure on multiple operational, management and compliance teams and our only error was asking for accountability and for these parties to correct the errors. Please let me know what else I can provide.


SIncerely,


MDN


Matthew D. Newman

**Signature:** *Matthew Newman (Jul 3, 2024 09:04 PDT)*

**Email:** newman.md@live.com

**EXHIBIT C**

From: Christy Sheppard <csheppard@argentfinancial.com>
Date: 24 January 2024 at 12:44 Pacific Standard Time
Subject: CCWO Finance 1 LLC - Incorrect units delivered 6/22
To: matthew.newman@morganstanley.com <matthew.newman@morganstanley.com>
Cc: ramzi@kenzimanagement.com <ramzi@kenzimanagement.com>, John Messer <jmesser@mlgfirm.com>


After some discussions with BNY Mellon as the original Custodian, it has been determined there was an error, which has now been corrected, and we are ready and able to deliver the balance of the 296,703,000 units which would total 297,000,000 units. Please confirm if the below details are still correct and I will instruct FIS Global, as our Custodian to deliver the balance of the units.


Transfer of CCWO Finance 1 LLC bond from TMI Trust Company to Morgan Stanley; Euroclear Code 29577;

Acct Name: Kenzi Management Inc.; Acct No.: ▓▓▓▓▓ Bank Officer: Matthew D. Newman / Email: matthew.newman@morganstanley.com


Thanks!





**Christy Sheppard  |  Trust Officer**


**Argent Institutional Trust Company**

5901 Peachtree Dunwoody Road, Suite C-495  |  Atlanta, GA 30328

Phone: 678.221.5894



Think before you print and/or forward.

CONFIDENTIALITY: This e-mail (including any attachments) may contain confidential, proprietary and privileged information, and unauthorized disclosure or use is prohibited.

If you receive this e-mail in error, please notify the sender and delete this e-mail from your system.

---

The above communication is intended for the recipients above and subject to the privacy disclosures of Argent Financial Group, Inc. and its subsidiaries. You will find them located at **www.ArgentFinancial.com**

---